## A. O. BRANNON, Assignee, etc. *v.* DANIEL BRANNON ET AL.

### (No. 8,996.)

A. O. S., being in embarrassed circumstances, and in contemplation of insolvency, executed and delivered, in Louisville, Kentucky, an instrument purporting to be a mortgage to N. D. S. et al. conveying a large amount of real estate in Cincinnati, Ohio, to secure certain indorsements of said N. D. S. et al., as individuals and firms, upon notes, drafts, etc.; but there is no note or obligation upon which said parties are jointly liable. The instrument has neither seal nor scrawl annexed to the signature of the grantor, nor was it acknowledged by him; but on the day of its execution, the two subscribing witnesses appeared before a commissioner (appointed by the governor of Ohio to take the acknowledgment of deeds and other instruments of writing, in Kentucky, to be recorded and used in Ohio), and made oath that they were called on by the grantor to witness his signature and acknowledgment to the deed, and that they did so witness the same at his request—all of which is duly certified by said commissioner, under his seal of office. This instrument was duly left for record in the recorder's office, at Cincinnati, in Hamilton county.

A. O. Brannon, Assignee, etc. *v.* Daniel Brannon et al.

On the next day after the execution of the foregoing described deed, the grantor, at Louisville, executed deeds of conveyance and assignment to the plaintiff of all his property, real and personal, in Louisville ond Cincinnati, in trust for the equal benefit of his creditors, which deeds were duly recorded in Louisville and Cincinnati. The plaintiff was not only an attesting witness to the mortgage, but had actual notice of it, before taking the deed of assignment. *Held:*

1. That the instrument of mortgage, although executed in Kentucky, was not so executed as, by the laws of Kentucky, to entitle it to be recorded; nor was it executed in conformity with the provisions of law for the execution of deeds within the State of Ohio, and is of no validity as against the plaintiff. That in Ohio no deed or mortgage can be properly recorded, unless it be properly executed and acknowledged or proven; that mortgages take effect only from the time of being delivered for record, as against all persons having or acquiring an interest in the property, except the mortgagor, and that without regard to the question of notice.

2. That the act entitled, "an act to authorize the governor to appoint commissioners to take acknowledgments of deeds or other contracts, and depositions, in other States," requires the acknowledgment or proof of such instruments to be taken according to the law of the State of Ohio; the object of this law being to furnish facilities for taking such acknowledgment or proof in other States and countries.

SPECIAL TERM.—Action to quiet title to certain real estate in Cincinnati, in favor of the plaintiff as general assignee, for the benefit of creditors as against certain mortgagees. The case was submitted to the court for decision upon the facts set forth in the petition and answers, and agreed upon at the hearing. From which it appears, that on the 12th day of January, 1858, Abraham O. Smith, a resident of the State of Kentucky, being in embarrassed circumstances, and in contemplation of insolvency, executed and delivered, in Louisville, in said State, an instrument purporting to be a mortgage, to the defendants, N. D. Smith, N. J. Smith, Jacob Smith, and Charles O. Smith, conveying a large amount of real estate in the city of Cincinnati, Ohio, by the terms of which it is recited, that whereas said N. D. Smith and Jacob Smith, composing the firm of Jacob Smith & Co.; N. D. Smith and Charles O. Smith, composing the firm of N. D. Smith & Co.; and N. J. Smith and Charles O. Smith,

15

A. O. Brannon, Assignee, etc. *v.* Daniel Brannon et al.

*individually*, have severally and respectively indorsed various bills, drafts, and acceptances for Smith & Borland, Smith, Russell & Co., and Abraham O. Smith, individually, and are respectively bound thus : " The said N. J. Smith is my surety on a note to Griffin Kelly for $10,836, due 7th January, 1857 ; and said N. J. Smith and Charles O. Smith are my sureties on a note to said Griffin Kelly, for $12,985, due April 11th, 1857 ; the firm of N. D. Smith & Co. are bound on sundry notes and drafts of Smith & Rowland, for several large amounts (specially described) ; Jacob Smith & Co. are bound as indorsers for several large amounts (also specially described) ; Jacob Smith & Co. and N. D. Smith & Co. are also bound as indorsers on sundry bills (likewise specially described) ; N. D. Smith & Co. and N. J. Smith are liable as as indorsers, for $2,942, due February 11th, 1858 (and on sundry other drafts) ; N. D. Smith on a certain described note : Now, to secure said persons individually and as firms, growing out of any and all of said indorsements, as aforesaid," etc., [" I do hereby mortgage to them and each of them all my real estate in the city of Cincinnati, described," etc. " The right and title to the same, the said A. O. Smith doth hereby agree to warrant and defend unto the said Jacob Smith, N. D. Smith, N. J. Smith, and Charles O. Smith, against all claims. But when A. O. Smith shall cause the above named debts and liabilities to be paid off, and said indorsers discharged therefrom," etc., " then this mortgage shall cease," etc. In testimony whereof, the said A. O. Smith hath hereby set his hand and seal, the 12th day of January, 1858, at the city of Louisville.

(Signed) A. O. SMITH.
" Attest : A. O. Brannon,
" Geo. F. Barret."

It has neither seal nor scroll annexed to the signature of the grantor, nor was it acknowledged by him ; but on the day of its execution, the two subscribing witnesses appeared before J. J. Dozier (a commissioner appointed by the governor of Ohio, to take the acknowledgment and proof of

A. O. Brannon, Assignee, etc. v. Daniel Brannon et al.

deeds and other instruments of writing in the State of Kentucky, to be recorded and used in the State of Ohio), and made oath that they were called on by A. O. Smith to witness his signature and acknowledgment to a deed, and that they did so witness the same, at his request; all which is duly certified upon said instrument by said commissioner, under his seal of office.

This instrument was duly left for record in the recorder's office of Hamilton county, on the 13th day of January, 1858, at 12 o'clock, M.

On the 12th day of January, 1858, Daniel Brannon caused writs of attachment to be issued out of this court, which were levied upon said property, but the same have since been dismissed, on motion, after hearing, in general term. On the 13th day of said January, A. O. Smith executed a deed of conveyance and assignment, in the State of Kentucky, of all his property, real and personal, to the plaintiff, in trust for the equal benefit of his creditors; and also on the same day, executed another deed to the plaintiff of all the property in the city of Cincinnati, upon the same trusts, which was duly recorded. The plaintiff was not only an attesting witness to the *mortgage*, but had actual notice of it, before taking the *deed of assignment*.

*Groesbeck & Thompson*, for plaintiff.

*King & Anderson*, for defendants.

SPENCER, J. On the part of the plaintiff, it is claimed that this instrument of mortgage, although executed in Kentucky, was not so executed as to entitle it to be recorded by the laws of Kentucky, nor was it executed in conformity with the laws of Ohio, and is, therefore, of no validity as against the plaintiff; wherefore he asks that it may be declared of no effect as against him, and his title quieted.

On the part of the defendants, it is insisted that said mortgage was duly executed in conformity with the laws of

Kentucky. That the defendants, at the time of executing the same, were liable as indorsers for A. O. Smith, in a sum exceeding $80,000; that some of the defendants have since paid a portion of these liabilities, to the amount of upward of $12,000, and have been sued for payment of some $31,000 additional.

Defendants claim that plaintiff gave *no value* for the conveyance to him, but that it was merely executed to secure creditors, and that forasmuch as plaintiff had notice of the mortgage, he has no equity against it.

There is nothing in the framework of the petition seeking to charge the property in the hands of defendants, (assuming the mortgage to be effective) as being conveyed *in trust* for the benefit of all the creditors. But such a claim has been made in the argument, on the hearing, and if necessary so to do, we are authorized to allow an amendment to the petition for that purpose. It was further claimed in argument, on the part of the plaintiff, that by a statute of Kentucky, in force when the mortgage was executed, it became, *ipso facto*, an assignment in trust for the equal benefit of all the creditors, and that effect must be given to it in Ohio, agreeably to the laws of Kentucky.

The only evidence we have, as to the laws of Kentucky, in relation to the execution of deeds and mortgages, is found in the "Revised Statutes of Kentucky," title—"Conveyances;"—Chapter XXIV, pp. 196 to 202. Section 1 provides that "no *seal, scroll*, or *indentation* shall be necessary to give effect to a deed, except (it be) the deed of a corporation." Section 11. "No deed of trust or mortgage shall be valid against a purchaser for a valuable consideration, *without notice* thereof, or against any creditor, until such deed shall be acknowledged or proved according to law, and lodged for record."

Section 16. "Deeds executed in this State," etc., may be admitted to record, 1st. On the *acknowledgment* before the proper *clerk*, by the *party* making the deed; or 2d, by the proof of *two* subscribing witnesses, etc.; or 5th, on the *certifi-*

*cate* of a clerk of a county court of this State, that the same had been acknowledged or proved before him, as required by this section."

Section 24 provides that "the *clerk* of each county court shall record all instruments of writing embraced in any section of this chapter which shall be lodged for record, *properly certified,* or which shall *be acknowledged or proved before him* as required by law."

The law of Kentucky in regard to fraudulent assignments, in trust for creditors, etc., (Laws of Kentucky for '56, 107,) provides: Section 1. "That every sale, mortgage or assignment, which shall be made by debtors in contemplation of insolvency, and with the design to prefer one or more creditors, to the exclusion, in whole or in part, of others, shall operate as an assignment and transfer of *all* the property and effects of such debtor, and inure to the benefit of all his creditors," etc.—"excepting any mortgage made in good faith, to secure any debt or liability, contracted simultaneously with such mortgage, and lodged for record, within thirty days after its execution." The other sections of the statute provide how such trusts shall be wound up, etc.

I.  It is not necessary to consider what would have been the effect of this mortgage, had it embraced lands within the State of Kentucky, under the statute just cited. The property embraced in the mortgage is situate wholly within the State of Ohio, and it is plain that the law of Kentucky was intended only to apply to property within that State, such property as could be administered upon by her courts of justice. The law of Kentucky may control contracts made within that State; to be executed and enforced within her borders; or may declare the effect of such; it has no extra territorial operation; it can not act upon property beyond her jurisdiction, nor prevent parties from controlling property in other States, agreeably to the laws of such States. It will hardly be contended that if A. O. Smith had possessed *other* property in Cincinnati, not embraced in the mortgage, that that would have also passed to the mortgagee, as gen-

eral assignee, by virtue of the statute of Kentucky; and yet such, undoubtedly, would be the operation of the instrument in Kentucky.

II. Nor is it absolutely necessary to decide whether this mortgage (assuming it to have been properly executed and recorded) is to be regarded under the statute of Ohio as a conveyance in trust for the equal benefit of all the creditors of A. O. Smith; though such would seem to me to be its legal effect. The statute declares (3 Curwen, 2,239) that " all assignments of property *in trust*, which shall be made by debtors to trustees, in contemplation of insolvency, with the design to prefer one or more creditors to the exclusion of others, shall be held to inure to the benefit of all," etc.

Here we have an undoubted case of insolvency, contemplated by both parties to the mortgage; a conveyance made with a view to give preference to the mortgagees over other creditors; and the only requisite left to bring the case within the statute is, to declare that this is a conveyance *in trust*. In the case of *Harkrader, Crane et al.* v. *Leiby*, 4 O. S. 603, it was held that as to the form of the conveyance, or assignment, it might be made as well by way of mortgage, to secure a debt justly due, as by an absolute conveyance. The question to be decided in all such cases was, had the mortgagee an interest for any other party than himself—did he hold upon a trust, which either a third party, or the mortgagee himself could control? If he did the statute applied (ib. 609, 613.) How is it in the case before us? The conveyance is made to four individuals, to hold " to them and each of them," (*i. e.* jointly and severally) " to secure said persons individually, and as firms in their liabilities," etc. Now, there is no indebtedness specified in this instrument, in which all the parties are jointly liable, nor in which they are severally liable; and if there was, or such indebtedness might subsequently have arisen, yet the paper specified was neither joint nor several, but such as some of the parties were liable upon as individuals, some as individuals and firms jointly, and some as firms jointly, in no case embracing *all*. It fol-

lows that so far as the conveyance is joint, they held in trust for each; and so far as it was several, each held in trust for all—not each separately, until his single debt was paid, or each in proportion only to his single debt, but all jointly as well as severally, until the debts of each and all were paid; so that should the debt of any one be paid in full, his interest in the property did not thereby cease, but he still continued to hold as trustee for the others; and as such trustee he would be held to an account by the others, or by the mortgagor himself. This brings the conveyance within the statute.

But I have said this point need not be decided. The view which I have taken of the main question in the case renders it unnecessary.

III. That question is, whether the instrument executed in Kentucky has any operation or effect against the conveyance to the plaintiff.

By the law of Ohio for the execution, etc. of deeds, 3 Curwen, 2448, section 1, deeds, mortgages and other instruments for the conveyance of lands, executed within the State, are required to be signed, *sealed*, attested by two witnesses, and *acknowledged* before some proper officer appointed by law. The fifth section declares that " all deeds, mortgages, etc., for the conveyance or incumbrance of any lands, etc., situate within this State, executed and acknowledged, etc., or proven in any other State, territory or country, in conformity with the laws of such State, territory or country, or in conformity with the laws of this State, shall be as valid as if executed within this State in conformity with the foregoing provisions of this act;" and the seventh section declared that " all mortgages executed agreeably to the provisions of this act, shall be recorded, etc., and shall take effect from the time when the same are recorded," etc.

It follows from the seventh section, and has been so decided, 1st. That no deed or mortgage can be properly recorded, unless it be in all respects properly executed and

acknowledged, or proven. *Lessee of Johnston* v. *Haines,* 2 Ohio 55; *White* v. *Denman,* 16 Ohio 59; and 2nd. That mortgages take effect only from the time of being delivered for record, as against all persons having or acquiring an interest in the property, except the mortgagor, and that, without regard to the question of notice; 1st—As against a subsequent mortgagee, with notice, *Stansell* v. *Roberts,* 13 Ohio 148; *Mayham* v. *Coombs,* 14 Ib. 428. 2nd—As against a mere judgment creditor, with notice, *White* v. *Duncan,* 16 Ohio 59. 3d. Whether the mortgage be legal or equitable, 4 O. S. 45; or whether the judgment be recovered after the date and record of the mortgage, if the first day of the term intervenes between the date and record of the mortgage, *Jackson* v. *Luce,* 14 Ohio 514. 4th—As against an assignee holding for the benefit of creditors at large, *Bloom et al.* v. *Noggle et al.,* 4 O. S. 45.

In all these cases the question of *notice* has been held immaterial—the doctrine of equity in that regard not applying, but the statute requires the recording of the instrument as part of its execution, and is peremptory in its terms, declaring that mortgages shall take effect only from the time when presented for record, 4 O. S. 52-3. All creditors in such cases are said to have equal equities to procure payment for their debts; per Hitchcock, I. 14 Ohio 428. *Sup.*

These cases, and especially that of *Bloom et al.* v. *Noggle et al.,* 4 O. S. 45, settle the objections raised by the defendants' counsel, that the plaintiff is a voluntary assignee, and not a purchaser for value, and that if a purchaser he had notice of the prior equities.

The only remaining question is: Was this mortgage property executed and acknowledged or proven, so as to be recorded?

It is clearly not executed in accordance with the provisions of law for the execution of deeds within the State of Ohio, because, 1st: It has not the seal of the grantor affixed; and, 2d: It was not acknowledged by him before any officer appointed by law for that purpose. Was it, then, executed

agreeably to the laws of Kentucky, when received. It appears from the statutes of Kentucky already quoted, that a *seal* is not required to give validity to a deed or mortgage, nor as between the parties themselves, is it necessary that a deed should be *acknowledged* or *proven*. But as against subsequent purchasers, without notice, and creditors, it has no effect, until recorded.

To entitle a deed or mortgage to be recorded in Kentucky, it is necessary that the same should be acknowledged by the grantor, or proven by two subscribing witnesses; and where such deed is executed in Kentucky, the only officer appointed by law to take such acknowledgment, or proof, is the clerk of a county court. Here there is no such acknowledgment or proof; and of consequence, this mortgage has not been proven or acknowledged agreeably to the laws of Kentucky, and could not be recorded there, if it had included lands situate in that State. It is not a valid instrument, therefore, under the 5th and 7th sections of the deeds act.

It is contended, however, on the part of the defendants, that although not *executed* agreeably to the laws of Ohio, nor proven agreeably to the laws of Kentucky, yet this mortgage was executed agreeably to the law of Kentucky and *proven* agreeably to the law of Ohio, and is therefore valid. This position is predicated upon the provisions of an act entitled " an act to authorize the governor to appoint commissioners to take acknowledgments of deeds 'or other contracts, and depositions, in other States," by which it is enacted, section 1. "That the governor shall have power to appoint commissioners in any of the United States, with authority to take the acknowledgment and proof of the execution of any deed or other conveyance or lease, of any lands lying in this State, or of any contract, letter of attorney, or any other writing, under seal or not, to be used or recorded in this State." Section 2. " Such acknowledgment or proof so taken according to the laws of this State, and certified to by any such commissioner, under his seal of office, annexed to or indorsed on such in-

strument, shall have the same force and effect, as if the same had been made before a judge, or justice of the peace, or any other officer authorized to perform such acts in this State." Section 4. That such commissioner shall take an oath of office " well and faithfully to execute and perform all the duties of such commissioner, under and by virtue of the laws of the State of Ohio." Swan Stat. 179.

It is claimed that by the second section the acknowledgment or proof is to be taken according to the law of the State where made, and not by law of the State of Ohio. Hence the use of the word "the" in the first part of the section, in contradistinction to the word "this" in the latter part. The former denoting that the acknowledgment or proof is to be taken agreeably to the law of the State where taken, and the latter that its effect shall be the same as if done within this State; and this construction, it is claimed, is necessary to give full effect to all the words of the section, else how can the words "or proof," as applicable to deeds, have effect, and properly carry out the intent?

With regard to the verbal criticism on the use of the word "the," it does not indicate any particular State other than the one spoken of; the only antecedent (or State spoken of in the singular number) is this State, or the State of Ohio. If the intention had been to describe another State, the words "such State" would have been far more precise, or the "State where taken;" and this, too, would have been much the more natural mode of expression. If the words "or proof" are properly applicable to deeds only for the conveyance, etc., of lands, there may be some foundation for this claim; because there was, at the passage of this act, no law in existence, nor is there now, authorizing "proof of deeds" to be taken, and therefore these words would have no meaning, unless applied to the law of some other State.

But it must be observed that a large variety of subjects is embraced in the first section; deeds, leases, contracts, letters of attorney, or any other writing, whether under seal

or not, to be used or recorded in the State. Of all these, acknowledgments or proof may be taken, as the subject requires. If there be an account against the estate of a deceased person, to be used on settlement of the estate, such account may be proven in another State, before a commissioner. If there be an account for work and labor, or materials furnished for the building of a house or water-craft, the same may be attested or proven in another State, before a commissioner, with a view to its being recorded in Ohio, in order to put a lien upon such house or boat. If a deed for the conveyance of land, it may be acknowledged before such commissioner. Thus all the words of the section become fully applicable and necessary.

More than this, if the expression, "such acknowledgment or proof," related to deeds only, the words, "or proof," are not necessarily meaningless, as applicable to the laws of this State. The same expression is used in the fifth section of the deeds act, as applicable to the laws of Ohio. Thus, "all deeds, etc., executed *and acknowledged or proved,* in conformity with the laws of *such* State, etc., or in conformity with the laws of this State, shall be as valid," etc.; and yet it has been seen there is no law in Ohio for the proof of deeds. The words thus used are of general import; they had their origin at a time when deeds might have been proven under the laws of Ohio, and contemplate a future when such proof may be allowed.

There is nothing, then, in the particular phraseology of the second section of the commissioner's act which requires the construction put upon it by the defendants' counsel.

What, then, was the object of this statute? and what does its *language naturally import?* It should first be observed that the language of the act is not in the alternative; that is, the act does not say, "such acknowledgment or proof so taken, according to the laws of *either* this or some other State, shall have force and effect," etc., but according to the laws of *the* State, meaning some one only. If one only, then of which? The object of this law undoubtedly was to fur-

nish facilities for taking the acknowledgment and proof of deeds and other instruments intended to be used or recorded in Ohio, in other States, and countries—not only in the United States, but foreign lands. Such other States and countries may have made no provision for the acknowledgment or proof of such instruments. This law furnishes a mode by which such acknowledgment and proof can be taken in accordance with the laws of Ohio. Upon any other view, the law would be *felo de se.* If such provision should not be made in any other States or countries, the appointment of a commissioner therein would be useless, since the acknowledgment or proof would not be (so) taken.

If confirmation of this view of the legislative intention were wanting, it is found in the natural construction of the language used, as well as in the whole scope of the bill: "Such acknowledgment or proof so taken, according to the laws of the State, shall have the same force and effect as if made before any officer authorized to perform such acts in this State;" hence, if made before an officer within this State, it must be made according to the *laws* of this State. This, to my mind, is a *conclusive view* of the question.

But, further, when language is used which may be taken *either* way, but not *both,* it would seem but little less than a reproach upon the legislature to suppose they used it in a sense which would send a commissioner or officer to another State or country to certify evidence according to the law of such State or country, of which he might justly be supposed ignorant, rather than in accordance with the laws of Ohio, with which he would be supposed to be familiar, and where the conformity of his acts with the law could be judged of by all, without referring to the legislation of foreign lands.

Again, the third section of the act authorizes such commissioners to take depositions in other States, to be used in the courts of this State. Can there be any doubt that such depositions must be, then, in all respects, in conformity with the laws of Ohio?

Finally, the fourth section of the act requires the com-

missioner to take an oath of office—to do what? "To execute and perform all the duties of such commissioner, under and by virtue of the laws of the State of Ohio." Not such only as may be devolved upon him by the laws of Ohio, but to perform them all *under* (or in *accordance with*) the laws of Ohio.

It is hardly necessary to add, that the very appointment of an officer to perform acts rendered essential by the laws of a State, to establish rights between parties at home, or within the State making the appointment, presupposes that such acts are to be performed in consonance with the laws of that State.

I am of opinion, therefore, that this mortgage deed is not properly executed and recorded, so as to convey any title in the premises, as against the plaintiff, and that the plaintiff is entitled to have his estate quieted and established. A decree may be drawn accordingly.

Decree for plaintiff.