ALBERT JOHNSON *vs.* AUGUST SANDHOFF and another.

February 6, 1883.

| 30 | 197 |
|----|-----|
| 39 | 42 |
| 39 | 123 |
| 30 | 197 |
| 41 | 168 |
| 30 | 197 |
| 43 | 175 |
| 30 | 197 |
| 44 | 202 |
| 30 | 197 |
| 48 | 269 |
| 30 | 197 |
| 56 | 129 |
| 30 | 197 |
| 63 | 278 |
| 30 | 197 |
| 65 | 242 |
| 30 | 197 |
| e85 | 414 |

Recorded Mortgage with but One Witness—Validity as to Parties with Actual Notice.—H., owner of certain land, mortgaged it to W., May 9, 1857. The mortgage had but one witness, but was recorded May 16, 1857. Subsequently H. conveyed the land to F., who had notice of the mortgage. *Held,* that the mortgage was valid as against H., F., and others taking, or assuming to take, an interest in the land with notice thereof.

Same—Abortive Foreclosure.—W., in form, foreclosed the mortgage by advertisement August 27, 1859, after condition broken. *Held,* that the mortgage not being entitled to record on account of the defective attestation, the foreclosure was, as such, abortive.

Same—Conveyances under Abortive Foreclosure Sale Transfer Mortgagee's Interest.—But *held, also,* that though the foreclosure was thus abortive and ineffectual, it may, in the circumstances of this case, properly take effect as a transfer of W.'s rights as mortgagee to defendant, who is, through mesne conveyances, the assign and holder of the interest apparently acquired by W. as purchaser at the foreclosure sale, and who, upon receiving a conveyance of such interest, went into possession of the mortgaged premises peaceably and in good faith, and without any objection or opposition.

Same—Ejectment against Mortgagee in Possession, after Condition Broken.—*Held, further,* that by virtue of the transfer, the defendant occupies the position of a mortgagee in possession after condition broken,—one who took possession lawfully while the mortgage was in life and force, and whose mortgage has not been paid, and against whom, therefore, ejectment will not lie.

Appeal by plaintiff from an order of the district court for Hennepin county, refusing a new trial, after a trial by *Vanderburgh,* J., without a jury. The case is stated in the opinion.

*Benton & Roberts,* for appellant, cited *Thompson* v. *Morgan,* 6 Minn. 199, (292;) *Parret* v. *Shaubhut,* 5 Minn. 258, (323;) *Ross* v. *Worthington,* 11 Minn. 323, (438;) *Meighen* v. *Strong,* 6 Minn. 111, (177;) *Everest* v. *Ferris,* 16 Minn. 14, (26.)

*Levi, Cray & Hart* and *Robinson & Bartleson,* for respondent.

BERRY, J.* This is an action in the nature of ejectment. The land in controversy was originally owned by Haley, who, on May 9, 1857, mortgaged it to Wyman. The mortgage had but one witness, but it was, nevertheless, recorded on May 16, 1857. It was conditioned "to pay the sum of ———— dollars, according to the conditions of two promissory notes made by me, bearing even date herewith." As to this defect of the unfilled blank, as well as in regard to the discrepancy of dates, we are not inclined to question the finding of the trial court, "that it sufficiently appears what notes were intended to be secured," viz., two notes made by Haley to Wyman, dated May 9, 1857,—one, for $36, payable in six months; the other, for $236, in one year. September 5, 1857, Haley conveyed the land to Richard Fewer by deed of warranty, recorded October 19, 1857. At the time of his purchase Fewer was informed by Haley of the mortgage, and had actual notice thereof, and allowance for the mortgage was made in the consideration paid or allowed by him (Fewer) for the land, and in the words of the finding Fewer "held said land subordinate to said mortgage, as he well knew."

On or about August 27, 1859, Wyman, through Stewart, who acted "for him and as attorney," foreclosed the mortgage by advertisement. The foreclosure proceedings were in form regular, the premises being bid in for and in the name of Wyman for $424. The proper certificate and foreclosure papers were duly made and recorded as and for a regular foreclosure of the mortgage. Wyman, through an attorney in fact, on July 11, 1860, conveyed the premises by quitclaim deed to Russell, who, on November 16, 1864, conveyed the same to Stewart, with Wyman's approval, and both deeds were duly recorded. On June 30, 1868, Stewart conveyed the land to the defendant for $400 in cash, which sum Wyman received in full, "besides commissions paid to agents." From the time when, before the foreclosure proceedings were commenced, the notes secured by the mortgage were handed to him by the agent of Wyman, (a non-resident,) down to and including his conveyance to defendant, Stewart acted as Wyman's agent and attorney. Defendant, upon his purchase on June

*Gilfillan, C. J., because of illness, and Vanderburgh, J., having tried the cause in the district court, took no part in the decision of this appeal.

30, 1868, went into possession of the premises peaceably and in good faith, and without, so far as appears, any objection or opposition, and has since made valuable improvements thereon.

Richard Fewer died intestate June 19, 1866,.and his widow, Joanna Fewer, was appointed administratrix. Pending proceedings in the probate court for sale of the decedent's real estate, Stewart, who had previously (as we have seen) sold the premises to defendant, suggested to the probate judge the propriety of including the same (which had not been inventoried by the administratrix) in the list of lands licensed to be sold at the same time, stating that while "Fewer's interest did not amount to anything," yet, if included and sold, he would procure a purchaser for $100. The premises were included in the license, and, upon sale, were struck off to Lowry. The bid was made in Lowry's name by Stewart, the consideration being in fact paid by plaintiff. Lowry's connection with the business appears to have been merely nominal, and, having received a deed from Joanna Fewer as administratrix, as also her individual quitclaim deed, (both recorded December 15, 1868,) he quitclaimed to plaintiff on December 11, 1874. The trial court finds, upon what appears to be satisfactory evidence, that "plaintiff and Stewart were and are jointly interested in the venture."

Concisely stated, we take the effect of all this to be: (1) That Fewer took the premises with full knowledge and notice of the mortgage to Wyman, and subject to the same. (2) That Stewart and the plaintiff, for whom, as well as for himself, Stewart is to be regarded as acting, took with like knowledge and notice, and also subject to the Wyman mortgage. (3) That the mortgage, although defective for want of a second witness, was not therefore void, but was valid as against Haley and persons having notice like Fewer, Stewart, and the plaintiff. *Morton* v. *Leland*, 27 Minn. 35; and see, also, *Ross* v. *Worthington*, 11 Minn. 323, (438.) (4) That the mortgage, not being entitled to record, (on account of the defective attestation,) was, therefore, not entitled to be foreclosed by advertisement, (*Ross* v. *Worthington, supra*; *Thorp* v. *Merrill*, 21 Minn. 336;) and the attempted foreclosure was, therefore, as a foreclosure, abortive. (5) That though the foreclosure was, as such, abortive and ineffectual, it may,

in the circumstances of this case and in connection with the subsequent conveyances culminating in the deed from Stewart to the defendant, properly take effect as a transfer to defendant of Wyman's rights as mortgagee. (6) That defendant, by virtue of such transfer, occupies the position of a mortgagee in possession after condition broken,—one who took possession lawfully while the mortgage was in life and force, and whose mortgage has not been paid. That ejectment will not lie against him is elementary, and hence the court below was right in its conclusion that the plaintiff cannot recover in this action. *Pace* v. *Chadderdon*, 4 Minn. 390, (499;) *Brobst* v. *Brock*, 10 Wall. 519; *Jackson* v. *Minkler*, 10 John. 480; *Phyfe* v. *Riley*, 15 Wend. 248.

Of the foregoing conclusions the fifth and sixth, perhaps, require some further elucidation. It is settled by a great weight of authority that an irregular sale (upon a mortgage) of real estate, whether judicial or *in pais*, and even though it be no bar of the right of redemption, or void as against the mortgagor or his heirs or assigns, passes to the purchaser the rights of the mortgagee as such. For this proposition, says the supreme court of the United States, per Strong, J., authority is hardly needed. *Brobst* v. *Brock*, 10 Wall. 519; *Gilbert* v. *Cooley*, Walker, Ch. 494, (approved in *Hoffman* v. *Harrington*, 33 Mich. 392;) *Frische* v. *Kramer's Lessee*, 16 Ohio, 126; *Stark* v. *Brown*, 12 Wis. 572; *Moore* v. *Cord*, 14 Wis. 213; *Robinson* v. *Ryan*, 25 N. Y. 320; *Winslow* v. *Clark*, 47 N. Y. 261; Freeman, Void Jud. Sales, § 50.

This doctrine appears to rest upon an equitable estoppel. *Stark* v. *Brown, supra.* The mortgagee assumes to foreclose his mortgage by a sale of the mortgaged premises, and upon faith in this assumption the purchaser makes his bid and pays his money, and the mortgagee receives and retains it upon the faith of a valid foreclosure of his mortgage. Certainly, in good conscience, the mortgagor should not, in a case like this at bar, (where the bid equals the mortgage,) be permitted to hold or claim the mortgage as against the purchaser. If the sale proves abortive, so that it does not transfer the title of the mortgaged premises to the purchaser, there is equity in holding that it shall operate as far as it can to put the purchaser in the position in which the mortgagee assumed to put him, viz., to invest

him with title to the mortgage as a means of future foreclosure, or as entitling him to the redemption money. But, upon whatever ground it rests, the cases cited clearly establish the doctrine mentioned.

The cases of *Hill* v. *Edwards*, 11 Minn. 5, (22,) and *Everest* v. *Ferris*, 16 Minn. 14, (26,) are not inconsistent with it. The question presented by these cases, viz., as to the effect of a conveyance of the mortgaged premises by the mortgagee before foreclosure or entry for condition broken, is not raised by cases like this at bar. In the latter, the question is as to the effect of such a conveyance by a mortgagee who has assumed to foreclose after condition broken, and held himself out as foreclosing, but whose foreclosure proves abortive. In New York, where an abortive foreclosure sale is held to have the effect to pass the mortgagee's interest in the mortgage, the doctrine of *Hill* v. *Edwards* will be found to prevail also. *Purdy* v. *Huntington*, 42 N. Y. 334. The same state of things will be found in other jurisdictions. It is true that in this case the property was purchased at the foreclosure sale by the mortgagee himself, but this circumstance ought not to alter the result as respects a purchaser from him. The mortgagee's purchase at the sale, and his subsequent conveyance of the premises, ought to put his grantee upon the same footing as if he had purchased at the foreclosure sale. The same considerations of equity and good conscience ought obviously to work out the same result in the one case as in the other. See *Kanawha Coal Co.* v. *K. & O. Coal Co.*, 7 Blatchf. 391, 414.

This disposes of all the positions taken by plaintiff, which, in our view of the case, it is necessary to examine, and the result is that the order denying a new trial is affirmed.