THE PEOPLE v. JOHN A. MILLER AND MARSHALL K. MILLER.

*Quitclaim deed—After-acquired title.*

"A quitclaim deed can never inure to convey any subsequently-acquired title which was not actually owned in equity at the time of the deed." *Frost v. Society*, 56 Mich. 69.

Error to Eaton. (Hooker, J.) Argued October 24, 1889. Decided December 28, 1889.

Proceedings for an alleged obstruction of a street. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*George Huggett, Lyman H. McCall,* and *R. W. Shriner,* for appellant.

*H. F. & F. A. Pennington,* for defendants.

MORSE, J.   This suit was brought in justice's court to recover a penalty of five dollars for an alleged violation of an ordinance of the city of Charlotte, enacted to prevent the obstruction or incumbering of streets, lanes, etc. Plaintiff obtained judgment in that court, whereupon defendants appealed to the circuit court, where a trial was had before a jury, resulting in a verdict and judgment for defendants.   Plaintiff comes to this Court by writ of error.

It is admitted that defendants incumber, by machinery, etc., in front of their foundry, what is claimed by the plaintiff to be a portion of Cochrane avenue, in said city. The defense claimed that the title to the land at this point was in the defendant John A. Miller and his wife, Amanda Miller.   After the testimony was all in, the plaintiff asked the court to instruct the jury to find a verdict for the plaintiff, which was refused.   This is the chief assignment of error in the case.

The undisputed or conceded facts in the case are as follows:   In the year 1872, John A. Miller was the owner of lot No. 1 in McClure's addition to the village (now city) of Charlotte.   Lots Nos. 2 and 3 of the same addition, and adjoining lot 1, were, at the same time, owned by Mrs. Altha Rice, wife of D. P. Rice.   In May of that year, for the purposes of widening Cochrane avenue, upon which these lots fronted, John A. Miller and Amanda Miller, with a large number of other persons, joined in a quitclaim deed to the public.   Miller received $45 as a consideration for his deed.   The deed described the land conveyed "for the purpose of a public street or highway," as—

"All the following described lands and premises situate, lying, and being in the county of Eaton, State of Michigan, known and described as commencing at the southeast corner of section 12, in town 2 north, of range 5 west, and running thence north, on the section line, to the north line of said section 12; thence west, 50 feet; thence south, on a line parallel with the east line of said section 12, to the south line of said section 12; thence east, 50 feet, to the place of beginning,—to be used as a public street or highway, and for the purpose of widening the street known as 'Cochrane Avenue,' in the city of Charlotte, subject to the laws pertaining to and governing highways; together with all and singular," etc.

This deed was executed and acknowledged by John A. Miller and Amanda Miller on May 22, 1872, the instrument being dated in the body as of May 2, 1872. It was executed, also, by D. P. Rice, the husband of Altha Rice; but she did not join in the deed.

This deed, executed by the lot-owners along the street for the length of a mile, was intended to make the street, which is the main one in the city, 100 feet wide. The description in this deed embraced 17 feet in width from off the east end of lots 1, 2, and 3 of McClure's addition to the city of Charlotte.

Mrs. Rice deeded lots 2 and 3 to Laura Cadwell and John S. Opt, January 2, 1874, with the usual covenants of warranty, and made no exception as to this 17 feet. January 11, 1876, Laura Cadwell conveyed to John S. Opt her interest in said lots by warranty deed, making no exception of the land now claimed as highway; and November 12, 1880, John S. Opt and wife conveyed, in the same manner, these lots 2 and 3 to John A. Miller and Amanda Miller, his wife. Under these conveyances, Miller and wife claim the 17 feet alleged to have been obstructed by the defendants.

The court instructed the jury that the people must show, by a preponderance of proof, the existence of a highway

at the place where the obstruction existed; that the
proofs showed that when McClure platted this addition
the street was laid out four rods wide; that the plaintiff
claimed a dedication of the 17 feet, and that the people
must show that the person who owned the premises dedi-
cated the land for the purpose of a street,—either Mrs.
Rice, Opt, or Miller; and that the plaintiff must go fur_
ther, and prove, also, an acceptance on the part of the
public.    He also instructed them that he could recall no
evidence that would warrant the conclusion that Miller
had made any dedication since he came into the posses-
sion of this land; that the dedication must exist by reason
of what had occurred before Miller purchased; and that
the question was—

" Whether Mr. Miller bought that land with the street
existing there;    *    *    and it all hinges upon what these
people have done previously."   .

He also charged that the doctrine of estoppel, that had
been alluded to, by the taking of deeds, did not apply to
the case.    He ignored and rejected the claim of plaintiff
that Miller and his wife, by joining in the deed to the
public of this land, were thereby estopped, although they
did not then own it, from denying the existence of the
highway over this 17 feet afterwards acquired in their
deed from Opt.

There was some dispute as to the opening of this 17
feet to the public, although it clearly enough appears
that Miller's foundry or shop was built on the line of
the street as claimed by plaintiff, as was also his fence
north of his shop, leaving this 17 feet out to the com-
mons, if not in the street.    It is also clear that Miller
has always claimed the 17 feet, since he bought lots 2
and 3, as being his land, and no part of the street, and
has occupied a portion of it all the time, with machinery,
etc.    Mr. Miller built the shop himself, and testifies that

he left the 17 feet open for his own purposes; that the space was kept for the public to get in and out of the shop,—his customers. He also built a fence on lot 3, on which the shop stands, which is nearly, if not quite, on a line with the avenue, as claimed by the people. He built it nearly,—within 10 inches of,—where an old fence was, or had been. There is no fence between lot 2 and the street. Opt testified that there was a fence in front of the property when he and Cadwell bought it, and that the street was then 100 feet wide, but they always claimed to own the 17 feet.

We think the evidence as to the acceptance of this 17 feet by the city sufficient to show that, after the omnibus deed was made, in 1872, the street was considered as being 100 feet wide opposite these lots; that thereafter no part of said street was fenced in, and that the public authorities of the city did all that was necessary to indicate their acceptance of this disputed 17 feet as a public street or highway, and that they have done nothing since to abandon such acceptance. Therefore the solution of this question in dispute depends, first, upon the effect of the deed of John A. and Amanda Miller to the public, in 1872. If the giving of such deed estops them from claiming the 17 feet under their conveyance from Opt, then the dispute is ended in favor of the plaintiff. If not, then other questions as to dedication may arise.

It is admitted that if the deed of May, 1872, had been a warranty deed the estoppel would exist; but it is claimed by the defendants that a quitclaim deed cannot work such an estoppel. The counsel for the plaintiff claim that if a deed of bargain and sale, by release or quitclaim, bears on its face evidence that the grantors intended to convey, and the grantee expected to become invested with, an estate of particular description or qual-

79 MICH—7.

ity, and that the bargain had proceeded upon that footing between the parties, then, although it may contain no covenants of title, in the technical sense of the term, yet the legal operation and effect of the instrument will be as binding upon the grantor, and those claiming under him, in respect to the estate thus described, as if a formal covenant to that effect had been inserted; at least, so far as to estop them from ever afterwards denying that he was seised of the particular estate at the time of the conveyance.

It is contended that this deed is one of this kind; that it bears upon its face what particular estate or interest in the parcel of land described, and of which the 17 feet in question was a part, was intended to be conveyed, and what was being bargained for by the public; that it was an absolute bargain, sale, and quitclaim of the lands, not merely of all the interest of the grantors, and "for the purpose of a public street or highway." And again, after the description, the language of the deed is,—

"To be used as a public street or highway, and for the purpose of widening the street known as ' Cochrane Avenue' in the city of Charlotte, subject to the laws pertaining to and governing highways."

And that the ordinary doctrine of estoppel applies in case of a grant of an easement, so that if a person without title profess to convey an estate, or to grant an easement, his conveyances operates by way of estoppel if, at a subsequent period, he acquires a fee, and the subsequently-acquired estate is bound thereby; or as it is termed, the newly acquired estate "feeds the estoppel."

It appears from the record that Opt deeded lots 2 and 3 to John A. Miller and Amanda Miller, his wife, so that they are joint tenants in the premises in the entirety; the survivor taking, at the death of the other, the whole

title to the land. But Amanda Miller joined in the omnibus deed to the public, not as the wife of John A. Miller, but as Amanda Miller, without further designation; so that she is bound in the deed, if there is an estoppel, the same as the defendant John A. Miller. This omnibus deed did not describe the land of each lot-owner in separate parcels, but conveyed, in terms, upon its face, one description or certain strip of land. If the deed had described the land John A. Miller then owned as a separate parcel, among others also described in the same conveyance, there might be some force in the argument that Miller might, from the showing upon the face of the deed itself, have intended only to convey the particular strip from lot 1 which he then owned; but, as the deed was executed, it must be held that the instrument, upon its face, shows an intention in each signer thereto to convey the whole strip of land, as described, to the public, and for a particular use and purpose, as above shown. And the intention of the defendant Miller must be gathered from the deed alone, as it is not ambiguous in any respect. Its intent and purpose are clearly defined upon its face.

Numerous authorities are cited by plaintiff's counsel to support their position as above stated,—that Miller is estopped from asserting title to this 17 feet on lots 2 and 3, as against the easement to the public which he granted in the omnibus deed.[1] The counsel for defendants contend that these authorities do not reach the present case, and that the deed, being a quitclaim to lands which Miller did not then own, cannot work an estoppel against

---

[1] *Smith v. Lock*, 18 Mich. 56; *McConnell v. Rathbun*, 46 Id. 303; *Karrer v. Berry*, 44 Id. 391; *Plumer v. Johnston*, 63 Id. 165; *Fisher v. Hallock*, 50 Id. 463; *Parker v. Smith*, 17 Mass. 413; Bigelow, Estop. (4th ed.) 430, 431; *Van Rensselaer v. Kearney*, 11 How. 323; Rawle, Cov. 388, 389, and notes; *Sinclair v. Jackson*, 8 Cow. 586; Jones, Mtg. § 679; *McCrackin v. Wright*, 14 Johns. 193; Washb. Easem. 62 (note 2), and cases cited.

an after-acquired title. We are satisfied that the rule in this State is as claimed by defendants' counsel, and we need go no further for authorities. In *Frost v. Society*, 56 Mich., at page 69 (22 N. W. Rep. 189), Mr. Justice CAMPBELL, speaking for the Court, said:

"But a quitclaim deed can never inure to convey any subsequently-acquired title which was not actually owned in equity at the time of the deed."

The question of dedication and acceptance of the highway was properly submitted to the jury. The court was correct in stating to the jury that there was no evidence that Miller had ever dedicated this land, since he owned it, for the purposes of a public highway, and in instructing them that the dedication, if any, must be found from the acts of the grantors of Miller.

The judgment will be affirmed, with costs.

The other Justices concurred.