**In the Matter of the Petition of Joshua S. COLLIER, in Relation to Property Registered in Certificate of Title No. 1596547 for an Order Directing Entry of a New Certificate and Declaratory Relief.**

No. A05–1178.

Court of Appeals of Minnesota.

April 4, 2006.

John G. Westrick, Kirk M. Anderson, Westrick & McDowall–Nix, P.L.L.P., St. Paul, MN, for appellant Joshua Collier.

Timothy J. Grande, Katheryn A. Gettman, Joanne H. Turner, Mackall, Crounse & Moore, P.L.C., Minneapolis, MN, for respondent M & I Bank.

Arthur D. Walsh, A.D. Walsh & Associates, Woodbury, MN, for respondent Dennis Wager.

Considered and decided by LANSING, Presiding Judge; GORDON SHUMAKER, Judge; and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges the district court's grant of respondent's motion for summary judgment based on its finding that appellant's interest is junior to respondent's interest. Appellant argues that, although he had actual knowledge of respondent's unregistered interest in Torrens property, because respondent's interest was not registered, it did not bind or affect the land and merely served as a private contract. Because respondent's interest was unregistered, it was not an encumbrance, and appellant did not have actual notice of an interest in the land that was inconsistent with his interest. As a result, appellant is a good-faith purchaser under the Torrens law. We reverse.

## FACTS

Joseph Conley purchased the Torrens property at issue in 2000, subject to a mortgage held by respondent M & I

Bank.[1] The bank recorded its mortgage with the county recorder, but failed to register it with the county registrar, as is required for Torrens property. In 2002, Conley defaulted on his mortgage, and the bank filed a foreclosure action. Shortly thereafter, the bank published notice of the foreclosure sale and notified Conley of the date of the sale.

Approximately three months later, the bank held a foreclosure sale and purchased the property. Again, the bank recorded the certificate of sale, but did not register it with the county registrar. Approximately one month later, appellant Joshua Collier learned of the foreclosure sale and contacted the bank with an offer to purchase its interest. The bank declined. Nonetheless, Collier researched the property and learned that the bank had never registered its interest. Collier then contacted Conley and offered to purchase his interest for $5,000. Conley agreed and conveyed the property to Collier by warranty deed. The same day, Collier executed a mortgage in favor of Wager for $145,000 and registered both the warranty deed and the mortgage with the county registrar.

A few months later, Collier initiated the instant action by filing a petition in the district court, seeking a declaratory judgment of the priority of the various interests in the property. Both Collier and the bank moved for summary judgment, and the district court granted the bank's motion as to Collier and denied Collier's motion. (The district court denied the bank's motion as to Wager, but the bank and Wager subsequently entered into a stipulation, whereby the bank dismissed Wager from the proceeding with prejudice.) The district court concluded that Collier was not a good-faith purchaser under the statute because he had actual notice of the bank's interest at the time of his purchase, so the fact that he registered his interest before the bank was not determinative. This appeal follows.

## ISSUES

Can a purchaser for value of Torrens property be a good-faith purchaser if he has actual notice of the existence of an outstanding, but unregistered, mortgage at the time of the purchase?

## ANALYSIS

■ "On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

■ Here, there are no genuine issues of material fact. Both parties agree that (1) the property at issue is Torrens property, so any interest in the property must be registered; (2) the bank acquired an interest in the property prior to Collier acquiring his interest; (3) the bank never properly registered its interest; and (4) Collier had actual knowledge of the bank's

1. There are two respondents in this action, M & I Bank, which holds the contested interest, and Dennis Wager, a business associate of appellant. Respondent M & I Bank dismissed respondent Wager with prejudice from this action, so this opinion refers to M & I Bank as the sole respondent.

interest. Consequently, the question becomes whether the district court improperly applied the law to those undisputed facts. A reviewing court need not defer to the district court's application of the law when the material facts are not in dispute. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

The Torrens Act comprises several statutory sections in Minnesota Statutes chapter 508.

> No voluntary instrument of conveyance purporting to convey or affect registered land ... shall take effect as a conveyance, or bind or affect the land, but shall operate only as a contract between the parties.... The act of registration shall be the operative act to convey or affect the land.

Minn.Stat. § 508.47, subd. 1 (2004). In addition, "[e]very conveyance, ... which would affect the title to unregistered land under existing laws, if recorded, ... shall, ... affect the title to registered land if filed and registered with the registrar ...; and shall be notice to all persons from the time of such registering." Minn.Stat. § 508.48 (2004). And "[e]very person receiving a certificate of title pursuant to a decree of registration and every subsequent purchaser of registered land who receives a certificate of title in good faith and for a valuable consideration shall hold it free from all encumbrances." Minn. Stat. § 508.25 (2004). Regarding mortgages, the statute provides: "The owner of registered land may mortgage the same by deed or other instrument sufficient in law for that purpose.... Such ... mortgage ... shall be registered and take effect upon the title only from the time of registration." Minn.Stat. § 508.54 (2004). The interrelation of these Torrens sections presents a case of first impression in Minnesota.

■ We begin our analysis by examining the principles underlying Torrens law.

> The purpose of the Torrens Law is to establish an indefeasible title free from any and all rights or claims not registered with the registrar of titles, ... to the end that anyone may deal with such property with the assurance that the only rights or claims of which he need take notice are those so registered. The law was framed to accomplish that purpose; and it establishes rules in respect to registered land which differ widely from those which apply in the case of unregistered land.

*In re Juran*, 178 Minn. 55, 58, 226 N.W. 201, 202 (1929). Thus, Torrens property is unique, and the rules that govern unregistered land—or recording-act property—do not apply to Torrens property and are not necessarily helpful when interpreting the Torrens statutes.

■ In *Fingerhut Corp. v. Suburban Nat'l Bank*, we held that the bank's interest was not binding on the land because it did not register the interest. 460 N.W.2d 63, 66 (Minn.App.1990). "The necessity of registration to create an interest *in the land* is what distinguishes registered, or Torrens, property from abstract property." *Id.* at 65. There, the bank argued that notice of the unregistered interest was enough to satisfy the Torrens Act. But this court disagreed, stating that "the question is whether the mortgage taken by [the bank] can be effective before registration. The answer is, with respect to registered property, *unequivocally no.*" *Id.* at 66 (emphasis added). We held that prior to registration, the bank's interest in the land was merely a contract between the parties and had no effect on the land. *Id.*

■ It is well established in Minnesota that title in Torrens property must be

registered in order for it to be binding. *Juran*, 178 Minn. at 58–59, 226 N.W. at 202. But what effect, if any, does the good-faith-purchaser section of the statute have on the registration requirement? In *Finnegan v. Gunn*, Finnegan conveyed his land to Gunn for valuable consideration, but neither Finnegan nor Gunn registered the mortgage. 207 Minn. 480, 481, 292 N.W. 22, 22–23 (1940). Finnegan held the mortgage until his death, at which time Gunn's widow attempted to register it. *Id.* Finnegan's widow asserted her interest in the land, as she was not party to the conveyance. *Id.* at 481, 292 N.W.2d at 23. The court held that Gunn's widow's interest was superior because Gunn was a bona fide purchaser, and Finnegan's widow was not. *Id.* Because Gunn was a bona fide purchaser, his widow was entitled to the property. *Id.*

█ *Finnegan* seems to stand for the principle that registration is not the ultimate act with regards to Torrens property, but, in addition, one must be a good-faith purchaser. But the language of Minn.Stat. § 508.25 states not only that one must be a good-faith purchaser, but that if one is a good-faith purchaser, he "shall hold [the property] *free from all encumbrances.*" (Emphasis added.) Minn.Stat. § 508.54 (2004) is clear that under the Torrens law, a mortgage does not become an encumbrance until it is registered. We must then determine what effect, if any, a purchaser's actual notice of an unregistered mortgage has on whether he is a good-faith purchaser.

The court in *Juran* stated that the Torrens "act abrogates the doctrine of constructive notice except as to matters noted on the certificate of title. We think, however, that it does not do away with the effect of actual notice, although it undoubt-edly imposes the burden of proving such notice upon the one asserting it." 178 Minn. at 60, 226 N.W. at 202. Although that was dictum in *Juran*, it has been cited repeatedly and has since become the law.

In *In re Ocwen Fin. Servs., Inc.*, Jacox, a homeowner of Torrens property, entered into a contract to sell her home. 649 N.W.2d 854, 855 (Minn.App.2002), *review denied* (Minn. Nov. 19, 2002). As a result, the purchaser obtained a mortgage from Ocwen for part of the purchase price and entered into a purchase agreement with Jacox, stating that Jacox would "carry a note" on the remaining amount. *Id.* Jacox subsequently learned that Ocwen required, as a condition of its mortgage, that Jacox also take a mortgage instead of the note. *Id.* Jacox's mortgage was identified as a second mortgage in a U.S. Department of Housing and Urban Development statement. *Id.* at 857. The mortgages were time-stamped at 11:00 a.m. on November 24, 1999, but because Ocwen's mortgage received a lower registration number, it was considered to have been registered first. *Id.* The buyer subsequently defaulted on Ocwen's mortgage and Ocwen foreclosed by advertisement with no actual notice of the foreclosure sent to Jacox. When Ocwen sought a new certificate of title that reflected it as the property owner, free of encumbrances, Jacox filed an answer, claiming that her mortgage had priority because Ocwen had actual notice of Jacox's second mortgage. *Id.* at 856.

There was no dispute that Ocwen had actual notice of the second mortgage. The issue was the priority of the second mortgage. On cross-motions for summary judgment, the district court ruled that Jacox's mortgage had priority over Ocwen's. On appeal, we held that "Ocwen had no knowledge of an encumbrance inconsistent

with its interest in the property because the *Jacox* mortgage was clearly a 'second mortgage'. . . . The fact that Ocwen had notice of the Jacox *second* mortgage does not affect Ocwen's status as a bona fide purchaser." *Id.* at 857. Because Ocwen's mortgage was registered first, it had priority over the Jacox mortgage. *Id.*

Applying these precedents and the rationale behind the Torrens law to the instant case, we conclude that Collier's interest is superior to the bank's interest. Collier had actual notice that the bank possessed an unregistered interest—a mortgage—in the property. But because the bank did not register its mortgage, it was a private contract and not an encumbrance on the land. Actual notice of a private contract is not the type of notice that prevents a purchaser from being a good-faith purchaser. At the time Collier acquired and registered his interest in the property, he did not have actual notice of an encumbrance or interest that was inconsistent with his interest. Thus, such actual notice does not prevent Collier from being a good-faith purchaser under the statute.

## DECISION

A mortgage does not become an encumbrance, for purposes of the Torrens statute, until it is registered. Collier's knowledge of the bank's unregistered mortgage was not actual notice of an encumbrance or interest that was inconsistent with his interest. Therefore, Collier is a good-faith purchaser, and his registered interest is superior to the bank's unregistered interest.

**Reversed.**